**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| RAFFI H. KAJBEROUNI,<br><br>    Plaintiff,<br><br>    v.<br><br>BEAR VALLEY COMMUNITY SERVICES DISTRICT, et al.,<br><br>    Defendants. | Case No.: 1:19-cv-1703 JLT BAK (SKO)<br><br>ORDER GRANTING DEFENDANT'S MOTION TO DISMISS<br><br>(Doc. 36) |

Raffi Kajberouni asserts he was required to perform work without proper compensation as an officer of the Bear Valley Police Department. Kajberouni seeks to hold the Bear Valley Community Services District and the BVPD liable for violations of federal and state employment laws. (*See generally* Doc. 29.)

The District seeks dismissal pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, arguing several California Labor Code Sections are inapplicable to the District and Kajberouni failed to allege facts sufficient to support his claims. (Doc. 36.) Kajberouni opposes the motion, asserting the First Amended Complaint "states plausible claims upon which relief can be granted." (Doc. 42 at 2.) The Court finds the matter suitable for decision without oral arguments, and no hearing date will be set pursuant to Local Rule 230(g) and General Order 618. For the reasons set forth below, the motion to dismiss is **GRANTED**.

///

1

I. **Background and Allegations**

Kajberouni was employed in the position of "Police Officer I" with the BVPD from November 24, 2015 to May 15, 2019. (Doc. 29 at 5, ¶ 5.) Kajberouni asserts that while a direct employee of BVPD, he "was simultaneously an indirect employee" of the Bear Valley Community Services District, which "acts as the local government in Bear Valley Springs." (*Id.* at 5-6, ¶¶ 5, 7.)

According to Kajberouni, the BVPD and the District required him "to work, perform duties and spend time" without compensation. (Doc. 29 at 7, ¶ 9.) Kajberouni alleges the BVPD expected officers "to be ready to start patrolling at the beginning of their scheduled shift," which required several tasks without compensation. (*Id.* at 9, ¶ 10.) For example, Kajberouni asserts that prior to clocking in, he was required to don his uniform; "check[] equipment attached to duty belts and tactical ballistic vests to ensure that all safety equipment was functioning properly;" and load the "patrol vehicle with duty equipment, including but not necessarily limited to a Police Department issued laptop, gun(s), ammunition, lidar/radar, breathalyzer, defibrillator, and first aid bag." (*Id.* at 7-8, ¶ 9.)

Kajberouni alleges that if he was scheduled to start a shift starting at 6:00 am, he arrived "anywhere between 5:15 to 5:30 am" and took 10-15 minutes "to don his police uniform and safety and protective gear" in the locker room. (Doc. 29 at 9-10, ¶¶ 11, 12(a).) He asserts there were also times when he talked with other officers or sergeants about their shifts prior to going to the locker room, in which instance Kajberouni asserts BVPD and the District failed to compensate his for "approximately 15 to 30 minutes" of work. (*Id.* at 10, ¶ 12(b).) Kajberouni contends similar work—including doffing the uniform and protective gear—was required off the clock, after his shift. (*Id.* at 7, ¶ 9.) He asserts that he was compensated for the scheduled 12-hour shifts only, and "BVPD and [the District] did not compensate BVPD officers for any pre or post shift work." (*Id.* at 9, ¶ 10.)

Kajberouni contends the defendants failed to provide proper rest breaks and meal periods. (Doc. 29 at 8, ¶ 9.) Kajberouni alleges that during a "typical 12-hour patrol, he would not have a set time as to when is rest breaks and/or meal periods were." (*Id.* at 24, ¶ 41.) He asserts that he attempted "to schedule these during slow patrol periods." (*Id.*) However, Kajberouni alleges he was "not completely relieved of duty" during the rest and meal periods because he, and other officers, "could not turn their hand radio and remote shoulder speaker microphone off and were required to respond to calls

even if such resulted in interrupted meal and rest breaks." (*Id.* at 8, ¶ 9(d).) As a result, Kajberouni concludes he was "on call" for his rest and meal periods. (*Id.*)

Finally, Kajberouni asserts he "carried on his duty belt a tourniquet that he purchased for which BVPD neither provided nor reimbursed him." (Doc. 29 at 26, ¶ 43.) He contends the tourniquet "was necessary in case [he] ever needed to use such for himself, another officer, or a member of the public, for example due to being shot on the job." (*Id.* at 26-27, ¶ 43.) Kajberouni alleges the District and BVPD owe him "reimbursement for this necessary safety business expense." (*Id.* at 27, ¶ 43.)

Kajberouni initiated this action by filing a complaint on December 6, 2019, which he amended on October 14, 2021. (Docs. 1, 29.) Kajberouni seeks to hold the District and BVPD liable for the following causes of action: (1) failure to pay both minimum and regular wages under the Fair Labor Standards Act, 29 U.S.C. § 206; (2) failure to pay overtime wages under the FLSA; (3) meal period violations; (4) rest period violations; (5) failure to pay all wages due upon separation, and waiting time penalties; (6) failure to reimburse necessary business expenses; and (7) unfair business practices. (*See* Doc. 29 at 1-2, 20-27.)

The District filed the pending motion to dismiss on November 12, 2021. (Doc. 36.) Kajberouni filed his opposition to the motion on December 2, 2021 (Doc. 42), to which the District filed a reply on December 8, 2021 (Doc. 45).

## II.     Motions to Dismiss

A Rule 12(b)(6) motion "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal of a claim under Rule 12(b)(6) is appropriate when "the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). Thus, under Rule 12(b)(6), "review is limited to the complaint alone." *Cervantes v. City of San Diego*, 5 F.3d 1273, 1274 (9th Cir. 1993).

The Supreme Court explained: "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Supreme Court explained,

3

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Iqbal*, 556 U.S. at 678 (internal citations omitted).

"The issue is not whether a plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). The Court "will dismiss any claim that, even when construed in the light most favorable to plaintiff, fails to plead sufficiently all required elements of a cause of action." *Student Loan Marketing Assoc. v. Hanes*, 181 F.R.D. 629, 634 (S.D. Cal. 1998). To the extent pleading deficiencies can be cured by the plaintiff alleging additional facts, leave to amend should be granted. *Cook, Perkiss & Liehe, Inc. v. Northern Cal. Collection Serv.*, 911 F.2d 242, 247 (9th Cir. 1990) (citations omitted).

### III. Discussion and Analysis

The District asserts "the majority of the claims for relief alleged in the FAC are inapplicable to the District," and asserts the third, fourth, fifth, and seventh claims should be dismissed with prejudice. (Doc. 36 at 6.) In addition, the District contends Kajberouni failed to allege facts sufficient to support his sixth claim, and seeks dismissal of the claim.[1] (*Id.* at 6, 13.) Kajberouni contends the identified Labor Code provisions apply to the District, and any pleading deficiencies may be cured by amendment. (Doc. 42 at 8-11.)

#### A. Liability of the BVPD

As an initial matter, the District asserts that the Bear Valley Community Services District was "erroneously sued as an additional named defendant, Bear Valley Police Department." (Doc. 36 at 1.) The District maintains that the BVPD is "a department within the District," and as such the District alone is the proper defendant. (Doc. 45 at 3, emphasis omitted.) Indeed, Kajberouni acknowledges the District compensated BVPD officers, and the BVPD manual stated its "policies are not intended to

---

[1] In the motion, the District requested the sixth claim for relief be dismissed without prejudice. (Doc. 36 at 13.) In the reply, the District asserted the sixth claim "should be dismissed with prejudice." (Doc. 45 at 5, emphasis omitted.)

4

supersede any related Bear Valley Community Service District personnel Rules," which requires compliance with the personnel policies of the District. (Doc. 29 at 5, ¶ 6; *id.* at 8, ¶ 10.) Kajberoui notes the District's website indicates it "acts as the local government in Bear Valley Springs" and "manages and maintains the water utility, wastewater utility, solid waste transfer station, police, gate, and infrastructure including roads and mailboxes."[2] (*Id.* at 6, ¶ 7; *see also* Doc. 42 at 4 [noting the District "managed and maintained BVPD"].)

Notably, Kajberouni does not address the assertion that the District is the only proper defendant in the action, and dismissal of the BVPD as a separate defendant in the action appears appropriate. Whether Kajberouni agrees the BVPD is *not* independently liable, the issues before the Court relate to the sufficiency of the pleadings and his ability to impose liability upon the District, as challenged in the motion to dismiss.

**B.     Third and Fourth Claims for Relief: Meal and Rest Period Violations**

Kajberouni seeks to hold the defendants liable for the failure to provide uninterrupted meal periods and rest periods in violation of Cal. Lab. Code §§ 226.7 and 512. (Doc. 29 at 23-25.) Pursuant to Section 512, an employer must provide non-exempt employees with an uninterrupted meal period of at least thirty minutes for each work period of five hours, and two meal periods for each period of ten hours. *See* Cal. Lab. Code § 512(a). In addition, "[n]o employer shall require any employee to work during a meal or rest period or recovery period mandated..." Cal. Lab. Code § 226.7(b). If an employer fails to comply with these provisions, "the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each work day that the meal or rest period is not provided." Cal. Labor Code § 226.7(c).

The District notes that Kajberouni acknowledges its status as a public entity in the First Amended Complaint. (Doc. 36 at 9; *see also* Doc. 29 at 6, ¶ 7 [alleging "BVCSD is a California public entity employer"].) The District argues due to its status as a public entity, the identified meal and rest

---

[2] Documents subject to judicial notice, such as matters of public record, may be considered on a motion to dismiss. *See Harris v. Cnty of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2011) The Court may take judicial notice of information posted on a public entity's website when its accuracy is undisputed. *See Daniels-Hall v. Nat'l Educ. Assoc,* 629 F.3d 992, 998-99 (9th Cir. 2010); *Gilliam v. Bank of Amer., N.A.,* 2017 WL 4443263, at *2 (C.D. Cal. Oct. 5, 2017). There is no dispute as to the information identified on the District's website located at https://www.bvcsd.com, which is quoted in the First Amended Complaint. (*See* Doc. 45 at 43.) Thus, the Court may take judicial notice of the website and its contents.

break provisions of Sections 512 and 226.7 are inapplicable. (*Id.* at 8-10, citing *Johnson v. Arvin-Edison Water Storage Dist.*, 174 Cal.App.4th 729, 736 (2009); *Pinder v. Employment Devel. Dep't*, 227 F.Supp.3d 1123, 1152 (E.D. Cal. 2017).) Kajberouni maintains his claims under Sections 512 and 226.7 apply to the District though he does not address cases cited by the District or identify legal authority supporting his position. (Doc. 41 at 8.)

California courts have determined public entities are not subject to the meal and rest period requirements of Section 512 and 226.7. In *Johnson*, the Fifth District Court of Appeal observed that "traditionally, absent express words to the contrary, governmental agencies are not included within the general words of a statute," and "this rule applies to the Labor Code." 174 Cal.App.4th at 736 (quoting *Wells v. One2One Learning Foundation*, 39 Cal.4th 1164, 1190 (2006). The court noted also that the California Legislature "expressly applied certain wage and hour provisions to public entities," such as Labor Code Sections 550, 551, 552, and 554. *Id.* at 736. The court explained:

> If this court were to hold that, because not expressly exempted, public entities are subject to sections 510 and 512, we would be implying a term that has been used in one place, i.e., section 555, but excluded in another, i.e., sections 510 and 512. Such an interpretation would violate the maxim that when the Legislature has employed a term or phrase in one place and excluded it in another, it should not be implied where excluded. The reference to public entities in section 555 indicates that, in the context of wage and hour provisions, the Legislature expressly refers to public entities when it intends them to be included.

*Johnson*, 174 Cal.App.4th at 736-37 (internal citation, quotation marks omitted). *Johnson* observed Sections 510 and 512 infringe upon the "sovereign powers" of a public entity, which "can only perform its purposes and functions through its employees." *Id.* at 738. Accordingly, the court concluded a public entity "was exempt from the requirements of sections 510 and 512." *Id.* at 739.

The First District Court of Appeal adopted the rationale of *Johnson* in *California Correctional Peace Officers Assoc. v. State of California*, 188 Cal. App. 4th 646 (2010), and found that the failure to expressly exclude public entities from the provisions of Sections 512 and 226.7, did not extend these sections to municipalities. The court found requiring an express exclusion was "contrary to an established rule that has been recognized by the Legislature, i.e., public entities are not subject to a general statute unless expressly included." *Id.* at 653 (citation omitted).

The court also observed that, "[i]t is well established that public employees have been

historically exempt from IWC wage orders." *Id.* at 655 (citing *e.g., Monzon v. Shaefer Ambulance Serv., Inc.*, 224 Cal.App.3d 16, 29 (1990); *Kim v. Regents of Univ. of Cal.*, 80 Cal.App.4th 160, 166-167 (2000). Although the court had "no quarrel with the concept of meal breaks as generally being beneficial to all employees"—including those in public safety and law enforcement—the court noted its role was "to interpret the law, not insert what the Legislature has omitted." *Id.* at 656. Accordingly, the First District also concluded the meal period provisions of Sections 512 and 226.7 "do not apply to public employees." *Id.* at 650; *see also id.* at 657.

Following *Johnson* and *California Correctional Peace Officers' Assoc.*, this Court has concluded the employees of a public entity are not covered by Section 226.7 and 512. *Pinder*, 227 F.Supp.3d at 1152. The Court observed it was undisputed the defendant was a public entity, because the plaintiff described the defendant "as a 'government agency' and 'California government entity' in the First Amended Complaint." *Id.* Because Pinder was an employee of a public entity, the Court concluded the defendant was entitled to summary judgment on the meal period claims arising under Sections 512 and 226.7. *Id.* at 1153.

Similarly, Kajberouni acknowledges in his complaint that the District "is a California public entity employer." (Doc. 29 at 6, ¶ 7.) He notes the District "was formed pursuant to state law, to wit, the California Community Services Law found at Cal. Govt. Code §§61000-61850." (*Id.*) Kajberouni also observes the District "managed and maintained [the] BVPD." (*Id.*) As in *Pinder*, there is no dispute that the District was a public entity, and Kajberouni was its employee. Consequently, the District is not subject to the meal period provisions of Sections 512 and 226.7. *See Pinder*, 227 F.Supp.3d at 1152-53; *Johnson*, 174 Cal.App.4th at 736, 739; *California Correctional Peace Officers Assoc.*, 188 Cal. App. 4th at 650. 657; *see also Sanchez v. Regents of the Univ. of Cal.*, 2021 Cal. Super. LEXIS 5288, at *8 (Cal. Super. Ct. Jan. 8, 2021) ("Plaintiff cannot state a claim for the third cause of action for failure to pay meal and rest period compensation under Labor Code sections 226.7, 512, as it is established that public entities are not subject to these provisions"). Because Kajberouni is unable to state claims against the District under Sections 512 and 226.7, his third and fourth claims for meal and rest break violations are dismissed.

///

**C.      Fifth Claim for Relief: Wages Due and Waiting Time Penalties**

Kajberouni seeks to hold the District liable for "failure to pay all wages due upon separation" pursuant to California Labor Code Sections 201 or 202.[3] (Doc. 29 at 25, emphasis omitted.) In addition, he seeks waiting time penalties under Section 203, which provides that when an employer willfully fails to comply with Sections 201 or 202 upon an employee's separation, "the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days." Cal. Labor Code § 203(a). However, pursuant to Cal. Lab. Code § 220(b), the provisions of sections "200 to 211, inclusive… do not apply to the payment of wages of employees directly employed by any county, incorporated city, or town, or other municipal corporation." Cal. Lab. Code § 220(b).

Based upon the provision of Section 220(b), the District asserts "California Labor Code Sections 201, 202 and 203 are not applicable to the District." (Doc. 36 at 10.) The District contends in *Johnson*, the court "held that special districts, such as the District, are municipal corporations under these statutes." (*Id.*, citing *Johnson*, 174 Cal.App.4th at 740-41.) According to the District, "based on allegations in Plaintiff's FAC and California law, the District satisfies the criteria for a municipal corporation and is thus exempt from the requirements of Labor Code sections 201, 202, and 203." (*Id.* at 11.) On the other hand, Kajberouni asserts that Sections 201, 202, and 203 apply to the District because it was his "indirect and joint employer." (Doc. 42 at 8, emphasis omitted). In support of this assertion, Kajberouni notes he alleged that he was "a direct employee of BVPD" and "an indirect employee for BVCSD." (*Id.*, quoting Doc. 29 at 5, ¶ 5.)

Kajberouni's attempt to distinguish between his employment with BVPD and the District constitutes a difference without distinction. It is undisputed that the District "compensated BVPD officers, including Officer Kajberouni" for their shifts. (*Id.* at 8, ¶ 10, emphasis omitted.) These

---

[3] Kajberouni alleges he was owed "wages due upon separation" (Doc. 29 at 25, ¶ 42), but does not clarify if his employment was terminated or if he resigned from the position. Section 201 provides that "[i]f an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately." Cal. Lab. Code § 201. On the other hand, Section 202 relates to employees who quit and states "[i]f an employee ... *quits* his or her employment, his or her wages shall become due and payable not later than 72 hours thereafter..." Cal. Lab. Code § 202 (emphasis added). Importantly, a "plaintiff could not have both resigned and been terminated at the same time." *Perez v. DNC Parks & Resorts at Sequoia*, 2020 WL 4344911 *8 (E.D. Cal. July 29, 2020); *see also Pineda v. Bank of Am., N.A.,* 50 Cal. 4th 1389, 1394 (2010) (explaining Section 202 applies only "to employees who quit").

allegations clearly support a conclusion that the District paid Kajberouni's wages and was his "direct" employer. Moreover, the term "municipal corporation" is not "used in its strict or proper sense," but rather encompasses a district which "exercise[s] a governmental function." *Johnson*, 174 Cal.App.4th at 740-41. It is also undisputed that the District "acts as the local government" and maintains the police department. (*See* Doc. 29 at 6, ¶ 7; *see also* Doc. 42 at 4 (acknowledging the District "manages and maintained BVPD").) Thus, it appears the District is a municipal corporation within the meaning of Section 220(b). *See Johnson*, 174 Cal.App.4th at 740-41. Kajberouni does not dispute this status.[4] (*See* Doc. 42 at 8-9.) Because the District is a municipal corporation, Kajberouni is unable to state a claim against the District for violations of Sections 201, 202, or 203. Accordingly, the motion to dismiss the fifth claim for relief is granted.

### D.     Sixth Claim for Relief: Reimbursement of Expenses

Kajberouni seeks reimbursement of necessary business expenses under Cal. Lab. Code § 2802, which provides in relevant part: "An employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties, or of his or her obedience to the directions of the employer…." To state a claim under Section 2802, a plaintiff must allege: "(i) the employee made expenditures or incurred losses; (ii) the expenditures or losses were incurred in direct consequence of the employee's discharge of his or her duties, or obedience to the directions of the employer; and (iii) the expenditures or losses were reasonable and necessary." *Marr v. Bank of Am.*, 2011 WL 845914, at *1 (N.D. Cal. Mar. 8, 2011) (citing *Gattuso v. Harte-Hanks Shoppers, Inc.*, 42 Cal. 4th 554, 568 (2007)). "In addition, the employer 'must either know or have reason to know that the employee has incurred [the] expense.'" *Id.* (quoting *Stuart v. RadioShack Corp.*, 641 F. Supp. 2d 901 (N.D. Cal. 2009)).

Kajberouni alleges he "carried on his duty belt a tourniquet that he purchased for which BVPD neither provided nor reimbursed him." (Doc. 29 at 26, ¶ 43.) He contends the tourniquet "was necessary in case [he] ever needed to use such for himself, another officer, or a member of the public, for example due to being shot on the job." (*Id.* at 26-27, ¶ 43.) Thus, Kajberouni asserts the District

---

[4] To the contrary, Kajberouni agrees the District is a municipal corporation. (Doc. 42 at 9.)

owes him "reimbursement for this necessary safety business expense." (*Id.* at 27, ¶ 43.)

The District asserts Kajberouni's claim under Section 2802 fails because he fails to allege facts sufficient to support his claim. (Doc. 36 at 12-13.) The District contends Kajberouni does not allege he was directed to make the purchase or whether it "resulted from performing his duties." (*Id.* at 13.) The District also argues Kajberouni fails to allege facts sufficient to support a conclusion that the expenditures were "reasonable and necessary. (*Id.*) Further, the District observes Kajberouni "fails to allege whether the District knew or should have known that he incurred an expense." (*Id.*)

Kajberouni contends for the first time in his opposition that "his supervisor was aware" Kajberouni "carried a tourniquet on his utility belt daily." (Doc. 42 at 10.) In addition, Kajberouni asserts he "was told by Sergeant Pearce that the department (BVPD) would not purchase auxiliary items." (*Id.*) Acknowledging the pleading deficiencies, Kajberouni asserts his "claim can be cured through amendment to prove defendants were aware of [his] 2802 claim." (Doc. 42 at 10.)

It is undisputed that the facts alleged are insufficient to support a claim for reimbursement under Section 2802. For example, Kajberouni did not allege facts sufficient to support a conclusion that he was directed to purchase the tourniquet, only to be told by the sergeant that the department would not reimburse it, or that the tourniquet purchase was "a direct consequence" of discharging his duties. *See Marr*, 2011 WL 845914, at *1; *Gattuso*, 42 Cal. 4th at 568. Further, as Kajberouni acknowledges, he failed to allege in the First Amended Complaint any facts supporting a conclusion that the District knew, or had reason to know, that Kajberouni purchased the tourniquet for his belt.[5] Accordingly, the claim under Section 2802 is dismissed.

E.     **Seventh Claim for Relief: Cal. Bus. & Prof Code § 17200**

Kajberouni's final claim for relief in the FAC is for a violation of California's Unfair Competition Law, as set forth in Cal. Bus. & Prof. Code § 17200, *et seq.* (Doc. 29 at 27.) Under Section 17200, unfair competition includes any "unlawful, unfair, or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. Therefore, there are three prongs under which a claim

---

[5] On the other hand, there is no showing that an employee is entitled to decide whether additional items are necessary tools for the job and, based upon the employee's opinion, become entitled to reimbursement for the items the employee, in his sole discretion, purchases.

may be established under Section 17200. *Daro v. Superior Court*, 151 Cal.App.4th 1079, 1093 (2007) ("a business act or practice need only meet one of the three criteria—unlawful, unfair, or fraudulent—to be considered unfair competition"); *see also Lozano v. AT&T Wireless Servs.*, 504 F.3d 718, 731 (9th Cir. 2007) ("[e]ach prong … is a separate and distinct theory of liability"). Given the disjunctive nature of the prongs, an action may be unfair even if it is not unlawful. *Cel-Tech Communications., Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal.4th 163, 181 (1999).

Kajberouni contends the District engaged in "unlawful business practices." (Doc. 29 at 27, ¶ 44.) Acts proscribed under the "unlawful" prong of Section 17200 include "anything that can properly be called a business practice and that at the same time is forbidden by law." *Farmers Ins. Exch. v. Superior Court*, 2 Cal. 4th 377, 383 (1992) (quoting *Barquis v. Merchants Collection Assoc.*, 7 Cal.3d 94, 113 (1972)). In essence, the UCL "borrows violations of other laws and treats them as unlawful practices independently actionable under Section 17200." *Saunders v. Superior Court*, 27 Cal. App. 4th 832, 839 (1994) (internal quotation marks, citation omitted). Kajberouni asserts the District is liable under Section 17200 based upon the alleged violations of the FLSA and California Labor Code sections. (Doc. 29 at 27, ¶ 44.)

The District argues Kajberouni is unable to state a claim for unlawful practices under Section 17200 because it also "does not apply to public entities such as the District." (Doc. 36 at 12.) The District observes that under Section 17203, "[a]ny person who engages, has engaged, or proposed to engage in unfair competition may be enjoined in any court of competent jurisdiction." (*Id.*, quoting Cal. Bus. & Prof. Code § 17203.) The District asserts: "There is a myriad of California Court of Appeals decisions holding that the term 'person' in the Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, et. seq, does not include governmental entities. As such, governmental entities are not subject to claims under California Business and Professions Code section 17200 et seq." (*Id.*, citing *People for Ethical Treatment of Animals, Inc. v. Cal. Milk Producers Advisory Bd.*, 125 Cal.App.4th 871, 878-79 (2005).) Further, the District observes: "the Supreme Court of California has stated that 'Governmental entities ... are not subject to suit under the unfair competition law.'" (*Id.*, quoting *Leider v. Lewis*, 2 Cal.5th 1121, 1132 n.9 (Cal. 2017).)

Kajberouni argues that the cases upon which the District relies are "in applicable to [the

District] as an other organization of persons which should be held to have the same meaning under Business and Professions Code section 17021 which defines 'person' to include 'any person, firm, association, organization, partnership, business trust, company, corporation or municipal or other public corporation.'" (Doc. 41 at 9-10.) Kajberouni contends that if he is mistaken, "this issue can be cured through amendment by reference to B & P 17000 to 17101." (*Id.* at 10.)

The definition relied upon by Kajberouni under Section 17021 relates to the Unfair Practices Act, rather than the Unfair Competition Law, which starts in Section 17200. *See Townsend v. California*, 2010 WL 1644740, at *10 (E.D. Cal. Apr. 20, 2010) (noting the different definitions under the UCL and the Unfair Practices Act). As the First District Court of Appeal explained,

> The Unfair Practices Act (commencing with § 17000), which was enacted in 1941, contains its own definition of "person" to include "any person, firm, association, organization, partnership, business trust, company, corporation or *municipal or other public corporation.*" (§ 17021, italics added.) In contrast, the UCL (commencing with § 17200), which was enacted later, in 1977, omitted "municipal or other public corporation" from its definition of "person." (§ 17201.)

*People for the Ethical Treatment of Animals, Inc.,* 125 Cal.App.4th at 879 (footnotes omitted). Further, the Court explained that "had the Legislature wished to include governmental entities… in its definition of 'person[s]' subject to UCL liability it would have done so by using language similar to that in section 17021." *Id.* (modification in original). Because Kajberouni seeks to hold the District liable for "unlawful business practices under violating Cal. Bus. & Prof. Code § 17200, et. seq.," he clearly seeks to state a claim under the UCL, rather than the Unfair Practices Act. (*See* Doc. 29 at 27, emphasis omitted.) Accordingly, the definition identified by Kajberouni under Section 17021 is inapplicable to his claim. *See Townsend*, 2010 WL 1644740, at *10; *People for the Ethical Treatment of Animals, Inc.,* 125 Cal.App.4th at 879.

As the District argues, courts repeatedly determined public entities and municipal corporations are not "a person" under the UCL, and are not subject to UCL claims. *See Townsend*, 2010 WL 1644740, at *10; *see also People for the Ethical Treatment of Animals, Inc.,* 125 Cal.App.4th at 879; *Janis v. California State Lottery Com*., 68 Cal.App.4th 824, 831 (1998) (finding government entities were "not included in this definition of person" under Section 17201). Consequently, Kajberouni is unable to state a claim against the District under the UCL, and his seventh claim is dismissed.

### IV. Request for Leave to Amend

Pursuant to Rule 15 of the Federal Rules of Civil Procedure, leave to amend "shall be freely given when justice so requires," bearing in mind "the underlying purpose of Rule 15 to facilitate decisions on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (alterations, internal quotation marks omitted). When dismissing a complaint for failure to state a claim, "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Id*. at 1130 (internal quotation marks omitted). Accordingly, leave to amend generally shall be denied only if allowing amendment would unduly prejudice the opposing party, cause undue delay, or be futile, or if the moving party has acted in bad faith. *Leadsinger, Inc. v. BMG Music Publishing*, 512 F.3d 522, 532 (9th Cir. 2008).

Kajberouni requests that if the motion to dismiss is granted, that the Court grant him leave to amend. (Doc. 42 at 10-11.) As discussed above, the third, fourth, fifth, and seventh claims fail as a matter of law, and the deficiencies cannot be cured by amendment. However, the Court has insufficient information to conclude that amendment of the sixth claim for reimbursement under Cal. Lab. Code § 2801 is futile due to the sparsity of the allegations. Indeed, Kajberouni asserts that he has facts he can allege to state a claim under Section 2801. Furthermore, it does not appear amendment would cause undue delay at this juncture, and there is no evidence he acted in bad faith. Thus, the request for leave to amend is granted as to the sixth cause of action.

### V. Conclusion and Order

For the reasons set forth above, the Court **ORDERS**:

1. The motion to dismiss (Doc. 36) is **GRANTED**.
2. The third, fourth, fifth, and seventh causes of action against the District are **DISMISSED without leave to amend**.
3. The sixth cause of action for reimbursement is **DISMISSED with leave to amend**.
4. Plaintiff **SHALL** file any Second Amended Complaint within thirty days of the date of service of this order. If Plaintiff does not file an amended pleading, the First Amended Complaint (Doc. 29) shall be deemed the operative pleading, with the foregoing claims

dismissed.

IT IS SO ORDERED.

Dated:   **April 20, 2022**

*/s/ Jennifer L. Thurston*
UNITED STATES DISTRICT JUDGE