# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAFFI H. KAJBEROUNI,<br><br>   Plaintiff,<br><br>   v.<br><br>BEAR VALLEY COMMUNITY SERVICES DISTRICT, et al.,<br><br>   Defendants. | Case No.: 1:19-cv-1703 JLT CDB<br><br>ORDER GRANTING IN PART THE DISTRICT'S MOTION TO DISMISS<br>(Doc. 54)<br><br>ORDER GRANTING THE DISTRICT'S MOTION TO STRIKE<br>(Doc. 55) |

Raffi Kajberouni asserts he was required to perform work without proper compensation as an officer of the Bear Valley Police Department. Kajberouni seeks to hold the Bear Valley Community Services District and the BVPD liable for violations of federal and state employment laws. (*See generally* Doc. 51.)

The District seeks dismissal pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, arguing Kajberouni failed to allege facts sufficient to support his claim for reimbursement of necessary business expenses, and his requests for injunctive relief are fatally flawed. (Doc. 54.) In addition, the District seeks to strike reference to BVPD as a separate entity pursuant to Rule 12(f). (Doc. 55.) The Court finds the matters suitable for decision without oral arguments, and no hearing date will be set pursuant to Local Rule 230(g) and General Order 618. For the reasons set forth below, the motion to dismiss is **GRANTED IN PART** and the motion to strike is **GRANTED**.

1

**I.     Background and Allegations**

Kajberouni was employed in the position of "Police Officer I" with the BVPD from November 24, 2015 to May 15, 2019. (Doc. 51 at 4, ¶ 5.) Kajberouni asserts that while "a direct employee of BVPD, [he] was simultaneously an indirect employee" of the Bear Valley Community Services District, which "acts as the local government in Bear Valley Springs." (*Id.* at 4-5, ¶¶ 5, 7.)

According to Kajberouni, the BVPD and the District required him "to work, perform duties and spend time" without compensation. (Doc. 51 at 6, ¶ 9.) Kajberouni alleges the BVPD expected officers "to be ready to start patrolling at the beginning of their scheduled shift," which required several tasks without compensation. (*Id.* at 8, ¶ 10.) For example, Kajberouni asserts that prior to clocking in, he was required to don his uniform; "check[] equipment attached to duty belts and tactical ballistic vests to ensure that all safety equipment was functioning properly;" and load the "patrol vehicle with duty equipment, including but not necessarily limited to a Police Department issued laptop, gun(s), ammunition, lidar/radar, breathalyzer, defibrillator, and first aid bag." (*Id.* at 7, ¶ 9(b)-(c).)

Kajberouni alleges that if he was scheduled to start a shift starting at 6:00 am, he arrived "anywhere between 5:15 to 5:30 am" and took 10-15 minutes "to don his police uniform and safety and protective gear" in the locker room. (Doc. 51 at 8, ¶¶ 11, 12(a).) He asserts there were also times when he talked with other officers or sergeants about their shifts prior to going to the locker room, in which instance Kajberouni asserts BVPD and the District failed to compensate his for "approximately 15 to 30 minutes" of work. (*Id.* at 8-9, ¶ 12(b).) Kajberouni contends similar work—including doffing the uniform and protective gear—was required off the clock, after his shift. (*Id.* at 6-7, ¶ 9.) He asserts that he was compensated for the scheduled 12-hour shifts only, and "BVPD and [the District] did not compensate BVPD officers for any pre or post shift work." (*Id.* at 8, ¶ 10.)

In addition, Kajberouni contends the defendants failed to provide proper rest breaks and meal periods. (Doc. 51 at 20, ¶ 36.) Kajberouni alleges that during a "typical 12-hour patrol, he would not have a set time as to when his rest breaks and/or meal periods were." (*Id..*) He asserts that he attempted "to schedule these during slow patrol periods." (*Id.*) However, Kajberouni alleges "he remained on the clock for both rest breaks and meal breaks, and would have to interrupt them if he received a call for service." (*Id.*)

2

Finally, Kajberouni asserts BVPD and BVCSD either "failed to provide BVPD officers" with adequate supplies, and the supplies he purchased were not reimbursed. (Doc. 51 at 11-14, ¶¶ 20-23.) For example, Kajberouni asserts that "BVPD issued first-aid bags, but they were inadequate because they were never stocked, i.e. one would not have eye wash drops, gauzes, or certain size Band-Aids." (*Id*. at 12, ¶ 21.) He alleges he purchased "emergency roadside first aid kits and medical gloves." (*Id.*, ¶ 20.) Kajberouni reports he also carried a tourniquet and holster on his duty belt, "which BVPD neither provided nor reimbursed him." (*Id.* at 11, ¶ 20.) According to Kajberouni, the expenditures "were incurred in direct consequence of [the] discharge of his duties, or obedience to the directions of BVPD, and thus BVCSD, because BVPD officers are dispatched to every Bear Valley medical call." (*Id.*, ¶ 21.) He contends the calls to which he responded included self-puncture and domestic violence calls, for "which a tourniquet and adequate first aid supplies are crucial." (*Id.*) Kajberouni alleges: "It is standard for even deputies to wear a tourniquet. It is not an uncommon tool for other officers of other police departments to carry, including but not limited to the following other police departments nearest to Bear Valley: Stallion Springs, Tehachapi, and Kern County." (*Id.* at 13, ¶ 22.) He contends the defendants "either knew or had reason to know" of the expenses incurred by Kajberouni because he wore the items every day and informed BVPD Sergeant David Pierce of the tourniquet and holster purchases, to which Pierce responded: "Yeah, the department is not paying for it." (*Id.* at 13-14, ¶ 23.) Kajberouni contends the District and BVPD owe him "reimbursement for this necessary safety business expense." (*Id.* at 26, ¶ 42.)

Kajberouni initiated this action by filing a complaint on December 6, 2019, which he amended on October 14, 2021. (Docs. 1, 29.) Kajberouni sought to hold the District and BVPD liable for the failure to pay both minimum and regular wages, failure to pay overtime wages under the FLSA, meal period violations, rest period violations, failure to pay all wages due upon separation, failure to reimburse necessary business expenses, and unfair business practices. (*See* Doc. 29 at 1-2, 20-27.) The Court dismissed the several causes of action—including the claims related to meal and rest break violations, failure to pay wages due upon separation, and unfair business practices— failed as a matter of law and dismissed the claims without leave to amend. (Doc. 50 at 13.) However, the Court permitted Kajberouni to amend his claim for reimbursement of business expenses. (*Id.*)

3

On May 23, 2022, Kajberouni filed his Second Amended Complaint. (Doc. 51.) Kajberouni now seeks to state the following claims: (1) failure to pay both minimum and regular wages under the Fair Labor Standards Act, 29 U.S.C. § 206; (2) failure to pay overtime wages under the FLSA; (3) failure to reimburse necessary business expenses; and (4) unfair practices in violation of Cal. Bus. & Prof. Code § 17200. (*See* Doc. 51 at 1, 21-26.) Kajberouni also seeks injunctive relief, "requiring Defendants refrain from violating the FLSA and relevant any California Labor Codes and/or applicable Industrial Wage Order." (*Id.* at 27.)

The District filed the pending motions to dismiss and to strike on June 6, 2022. (Docs. 54, 55.) Kajberouni filed his oppositions to the motions on June 21, 2022.[1] (Docs. 59, 60.) The District filed its replies on June 30, 2022. (Docs. 61, 62).

## II.     Motion to Dismiss (Doc. 54)

A Rule 12(b)(6) motion "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal of a claim under Rule 12(b)(6) is appropriate when "the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). Thus, under Rule 12(b)(6), "review is limited to the complaint alone." *Cervantes v. City of San Diego*, 5 F.3d 1273, 1274 (9th Cir. 1993).

The Supreme Court explained: "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Supreme Court explained,

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that

---

[1] The District argues the oppositions were due on June 20, 2022 and should not be considered by the Court because they were untimely. (Doc. 61 at 2-3; Doc. 62 at 2.) As the District observes, pursuant to the Local Rules, any opposition to a civil motion "shall be in writing and shall be filed and served no later than fourteen (14) days after the motion was filed." Local Rule 230(c). In addition, "[a] failure to file a timely opposition may also be construed by the Court as a non-opposition to the motion." *Id.* Because the District filed its motions on June 6, 2022, any opposition to would generally be due on June 20, 2022. However, the Court was closed in observance of a federal holiday on June 20, 2022. Under the Federal Rules of Civil Procedure, deadlines falling on federal holidays are extended. *See* Fed. R. Civ. Pro. 6(a)(2)(C) ("if the period would end on a Saturday, Sunday, or legal holiday, the period continues to run until the same time *on the next day* that is not a Saturday, Sunday, or legal holiday") (emphasis added). Given the federal holiday, the Court finds the oppositions were not untimely when filed the next day: June 21, 2022.

4

> a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Iqbal*, 556 U.S. at 678 (internal citations omitted).

"The issue is not whether a plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). The Court "will dismiss any claim that, even when construed in the light most favorable to plaintiff, fails to plead sufficiently all required elements of a cause of action." *Student Loan Marketing Assoc. v. Hanes*, 181 F.R.D. 629, 634 (S.D. Cal. 1998). To the extent pleading deficiencies can be cured by the plaintiff alleging additional facts, leave to amend should be granted. *Cook, Perkiss & Liehe, Inc. v. Northern Cal. Collection Serv.*, 911 F.2d 242, 247 (9th Cir. 1990) (citations omitted).

### A.   Third Claim for Relief: Reimbursement of Expenses

Kajberouni seeks reimbursement of necessary business expenses under Cal. Lab. Code § 2802, which provides in relevant part: "An employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties, or of his or her obedience to the directions of the employer…." To state a claim under Section 2802, a plaintiff must allege: "(i) the employee made expenditures or incurred losses; (ii) the expenditures or losses were incurred in direct consequence of the employee's discharge of his or her duties, or obedience to the directions of the employer; and (iii) the expenditures or losses were reasonable and necessary." *Marr v. Bank of Am.*, 2011 WL 845914, at *1 (N.D. Cal. Mar. 8, 2011) (citing *Gattuso v. Harte-Hanks Shoppers, Inc.*, 42 Cal. 4th 554, 568 (2007)). "In addition, the employer 'must either know or have reason to know that the employee has incurred [the] expense.'" *Id.* (quoting *Stuart v. RadioShack Corp.*, 641 F. Supp. 2d 901 (N.D. Cal. 2009)).

The District argues Kajberouni "continues to fail to state a claim" because "some of the newly added facts also make it intrinsically implausible to state a claim under Labor Code section 2802." (Doc. 54 at 8.) The District argues that it provided Kajberouni, "according to his own allegations, with lifesaving equipment and first aid supplies." (*Id.* at 9.) The District contends Kajberouni "fails to allege that he requested the District to re-stock the first aid bags at any point." (*Id.* at 8.) The District

argues the "purchases were not necessary, rather they were the Plaintiffs' preferred equipment and method to obtain the tools he deemed as necessary." (*Id.* at 8-9.) In addition, the District asserts "due to stocking issues, [Kajberouni] unilaterally made the decision that the equipment provided by the District was inadequate, without giving the District an opportunity to cure such alleged supply issues." (*Id.* at 9.) Thus, the District concludes the allegations in the SAC "make it implausible that his purchases were necessary under Labor Code section 2802." (*Id.*)

In response, Kajberouni contends for the first time in his opposition that he "was told by Sergeant Pierce that the department (BVPD) would not purchase ancillary items despite BVPD's issuance of inadequate first-aid bags that were never stocked, which BVPD had a duty to stock." (Doc. 59-1 at 5.) In addition, he asserts that he "complain[ed] multiple times about the inadequately stocked BVPD first-aid bags, so too did other BVPD Officers." (*Id.* at 6.) He contends:

> [P]rior to purchasing the equipment for which Mr. Kajberouni complains BVCSD failed to reimburse him, Mr. Kajberouni informed Sergeant Pierce—who was responsible for and authorized to approve BVPD expenses for Officers—3-4 times that the first-aid bags were never stocked. According to Mr. Kajberouni, Sergeant Pierce's response to Mr. Kajberouni was either "It's not in the budget" or "We'll get to it", but BVCSD and BVPD neither added adequate first-aid kits to BVCSD and/or BVPD's budget, nor ever got to it. Furthermore, other patrol Officers Chad Foss and Stacey Arebalo also complained, Officer Foss at least once and Officer Arebalo at least 3 to 4 times like Mr. Kajberouni. These complaints were met with BVCSD's and/or BVPD's rejection. So, Mr. Kajberouni ceased such complaints, and instead purchased his own necessary equipment, because notifying and complaining to BVCSD through BVPD proved futile.

(*Id.*) Kajberouni contends that the facts as alleged are sufficient to support his claim but leave to amend should be granted in light of these additional facts if the Court finds he fails to state a claim. (*Id.* at 4-5.)

Significantly, the Court may not consider the new allegations made in the opposition by Kajberouni to evaluate the sufficiency of his claim. *See Schneider v. Cal. Dep't of Corr.,* 151 F.3d 1194, 1197 n. 1 (9th Cir. 1998) (concluding that new allegations in opposition were irrelevant for Rule 12(b)(6) purposes and that "court may not look beyond the complaint… such as a memorandum in opposition to a defendant's motion to dismiss"); *see also Arres v. City of Fresno*, 2011 WL 284971, at *18 (E.D. Cal. Jan. 26, 2021) ("a complaint is judged based on its allegations, not new facts or claims

raised in F.R.Civ.P. 12(b)(6) opposition"). Therefore, the Court declines to consider the additional allegations made by Kajberouni in his opposition.

In the SAC, Kajberouni clearly alleges he made expenditures, including purchases of a tourniquet, holster, emergency first aid kits, and medical gloves. (Doc. 51 at 11-12, ¶ 20.) Kajberouni alleges he was dispatched to medical calls, including self-puncture and domestic violence calls, "for "which a tourniquet and adequate first aid supplies are crucial." (*Id*. at 11, ¶ 20.) Furthermore, he contends that "[i]t is standard" for officers and deputies in the region to wear a tourniquet, including "other police departments nearest to Bear Valley: Stallion Springs, Tehachapi, and Kern County." (*Id.* at 13, ¶ 22.) Taking the facts as alleged in the light most favorable to Kajberouni, the Court may infer that use of tourniquet was a "consequence of [the] discharge of his duties," which included responding to medical calls. Similarly, the fact that tourniquets were "standard" piece of equipment for officers and deputies with other departments in the region, also supports a conclusion that the purchases of a tourniquet and its holster were "reasonable and necessary" expenditures for Kajberouni. Finally, Kajberouni alleges that the District was aware of the purchases for his duty belt and and failed to reimburse him. (*See id.* at 13-14, ¶ 23.) Therefore, the Court finds the facts alleged in the SAC are sufficient to state a cognizable claim under Section 2802, and the motion to dismiss the third cause of action is denied.

B. **Fourth Claim for Relief: Cal. Bus. & Prof Code § 17200**

Kajberouni included a claim for "unfair practices" in violation of Section 17200 in his SAC. (Doc. 51 at 26.) However, as the District observes, the Court previously determined that "Kajberouni is unable to state a claim against the District under the UCL," and the claim was dismissed without leave to amend. (Doc. 50 at 12, 13.) Accordingly, the fourth claim for relief is again dismissed.[2]

---

[2] Kajberouni asserts in his opposition that he intended to change the cause of action to state a violation of California's Unfair Practices Act (as provided in Cal. Bus. & Prof. Code §§ 17000-17101, § 17076, and §17082) rather than the Unfair Competition Law. (Doc. 59-1 at 6.) The Court declines to address the merits of a claim under the Unfair Practices Act, as such is clearly not plead in the SAC. *See, e.g., Gerritsen v. Warner Bros. Entm't*, 116 F. Supp. 3d 1104 (C.D. Cal. 2015) ("As courts routinely recognize, it is improper for a plaintiff to assert an unpled theory of liability in opposition to a defendant's Rule 12(b)(6) motion to dismiss"); *Brown v. Martinez*, 2015 WL 4730186 at *4 (E.D. Cal. Aug. 7, 2015) ("an opposition to a motion to dismiss is not an appropriate place to raise and argue new claims"); *Elizabeth L. v. Aetna Life Insurance Co*., 2014 WL 2621408, *4 (N.D. Cal. June 12, 2014) (refusing to consider unpled theories of liability raised for the first time in opposition to defendant's motion to dismiss). Because such a claim was not raised in the SAC, any request to add a claim under the UPA it must now be raised by a properly noticed motion to amend.

C. **Prayer for Injunctive Relief**

Kajberouni indicates he seeks "an injunction requiring Defendants refrain from violating the FLSA and relevant any California Labor Codes and/or applicable Industrial Wage Order." (Doc. 51 at 27.) The District contends this "prayer for injunctive relief has two separate, but equally fatal flaws." (Doc. 54 at 10.) The District argues:

> Since the Order dismissed with prejudice wage and hour claims under California law, the only remaining basis for such injunctive relief is the FLSA. However, such relief is unavailable to Plaintiff, as the ability to obtain injunctive relief for violations of overtime and minimum wage provisions of the FLSA rests exclusively with the United States Secretary of Labor. *See Silveira v. Beard*, 2013 WL 2458393, at * 5 (E.D. Cal. Jun 6, 2013). Further, Plaintiff's prayer for injunctive relief fails, because as a former employee, Plaintiff does not have standing to obtain injunctive relief against the District. *Id*. at *6.

(*Id.* at 10.) Thus, the District contends Kajberouni lacks standing to pursue injunctive relief and it fails as a matter of law. (*Id.*)

In response, Kajberouni indicates he "seeks injunctive relief under the UPA (not FLSA) because, on information and belief, BVCSD and/or BVPD has failed and continues to fail to compensate BVPD patrol officers for donning and doffing and loading and unloading their patrol vehicles." (Doc. 59-1 at 9.) However, as noted above, Kajberouni did not include a claim under the UPA in the SAC. Moreover, he does not address his lack of standing as a former employee.

Significantly, a state statute cannot alter the constitutional standing requirements of federal courts, even for public policy reasons. *See Hangarter v. Provident Life & Accident Ins. Co*., 373 F.3d 998, 1022 (9th Cir. 2004). The Ninth Circuit explained:

> Even if Cal. Bus. & Prof. Code § 17204 permits a plaintiff to pursue injunctive relief in California state courts as a private attorney general even though he or she currently suffers no individualized injury as a result of a defendant's conduct, "a plaintiff whose cause of action [under § 17204] is perfectly viable in state court under state law may nonetheless be foreclosed from litigating the same cause of action in federal court, if he cannot demonstrate the requisite injury" to establish Article III standing.

*Id.*, quoting *Lee v. Am. Nat'l Ins. Co*., 260 F.3d 997, 1001-1002 (9th Cir. 2001) (modification in original). The Ninth Circuit observed that "Article III standing requires an injury that is actual or imminent, not conjectural or hypothetical," and a plaintiff seeking injunctive relief "must demonstrate

8

a real or immediate threat of an irreparable injury." *Id*. at 1021 (citation omitted, emphasis in original). Without a "contractual relationship" between the parties, the Ninth Circuit found there was no personal threat of injury, and Hangarter lacked standing to pursue injunctive relief. Id.

In the employment context, the Ninth Circuit repeatedly applied this principal of standing and determined a "former employee has no claim for injunctive relief addressing the employment practices of a former employer absent a reasonably certain basis for concluding he or she has some personal need for prospective relief." *Bayer v. Neiman Marcus Grp., Inc*., 861 F.3d 853, 864 (9th Cir. 2017); *see also Walsh v. Nev. Dep't of Human Res*., 471 F.3d 1033, 1037 (9th Cir. 2006) (holding a former employee "lacked standing to sue for injunctive relief from which she would not likely benefit"); *Slayman v. FedEx Ground Package System, Inc*., 765 F.3d 1033, 1048 (9th Cir. 2014) (finding former employees "lacked Article III standing to seek prospective relief"). Because Kajberouni did not allege any facts sufficient to support a conclusion that he has a need for *prospective* relief—or even could benefit from it— as a former employee of the District, he lacks standing to purse injunctive relief. *See Slayman*, 765 F.3d at 1048; *Walsh,* 471 F.3d at 1036-37. Therefore, the motion to dismiss the prayer for injunctive relief is granted.

### III.     Motion to Strike (Doc. 55)

Pursuant to Rule 12(f), a district court "may strike from a pleading ... any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). A "redundant" matter is comprised "of allegations that constitute a needless repetition of other averments or which are foreign to the issue to be denied." *Wilkerson v. Butler*, 229 F.R.D. 166, 170 (E.D. Cal. 2005). An immaterial matter "has no essential or important relationship to the claim for relief or the defenses being pleaded," while an "[i]mpertinent matter consists of statements that do not pertain, and are not necessary, to the issues in question." *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other grounds* (quoting 5 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1382, at 706-07, 711 (1990)).

The purpose of a Rule 12(f) motion "is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Sidney-Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983). Generally, motions to strike "are disfavored and

9

infrequently granted." *Neveau v. City of Fresno*, 392 F. Supp. 2d 1159, 1170 (E.D. Cal. 2005). In reviewing a motion to strike, the Court must view the pleadings under attack in the light most favorable to the pleader. *Lazar v. Trans Union LLC*, 195 F.R.D. 665, 669 (C.D. Cal. 2000). "If there is any doubt whether the portion to be stricken might bear on an issue in the litigation, the court should deny the motion." *Platte Anchor Bolt, Inc. v. IHI, Inc.*, 352 F.Supp.2d 1048, 1057 (N.D. Cal. 2004).

The District argues references to the Bear Valley Police Department "as a separate Defendant" should be stricken from the SAC. (Doc. 55 at 6.) The District notes the BVPD "is not an individual entity, [but] rather they are an arm of the District." (*Id.* at 7.) The District observes that the SAC "implies that BVPD is merely a District department by imputing BVPD's alleged knowledge of Plaintiff's incurred expenses onto the District." (*Id.*) The District argues that "referencing the BVPD as a separate defendant has no essential importance to whether the District is liable to Plaintiff." (*Id.* at 6.) The District also contends "the BVPD's status as a separate defendant creates confusion from the early stages of litigation, all the way through trial." (*Id.*) The District explains:

> Essentially, a jury may easily find the claim that BVPD is a separate entity confusing in light of the fact that it is merely a department within the District. Further, if Plaintiff's allegations are evaluated by a jury, the jury would be faced with jury instructions concerning liability of each alleged party, even though there is only one proper defendant.

(*Id.*) Thus, the District argues "reference to the BVPD as a separate party and defendant, specifically in paragraphs 6, 38, 39, and 41-43 of the SAC, should be stricken from the SAC." (*Id.* at 7.)

Kajberouni contends "the Court should deny [the] Motion To Strike under Rule 12(f) because Plaintiff's SAC does not contain any immaterial matter as BVPD could be liable as the direct employer of Plaintiff while BVCSD indirectly employed Plaintiff as a joint employer." (Doc. 60 at 8.) According to Kajberouni, the information provided on the District's website does not "negate BVPD from being a former joint employer of Plaintiff. (*Id.* at 7.)

The Court previously observed that "Kajberouni acknowledges the District compensated BVPD officers, and the BVPD manual stated its 'policies are not intended to supersede any related Bear Valley Community Service District personnel Rules,' which requires compliance with the personnel policies of the District. (Doc. 60 at 5, citing Doc. 29 ¶¶ 6, 10.) In addition, the Court took judicial notice of the website, which indicates it "acts as the local government in Bear Valley Springs"

10

and "manages and maintains the water utility, wastewater utility, solid waste transfer station, police, gate, and infrastructure including roads and mailboxes." (*Id.*) The Court observed that "Kajberouni [did] not address the assertion that the District is the only proper defendant in the action," and found "dismissal of the BVPD as a separate defendant in the action appears appropriate." (*Id.*)

Although Kajberouni alleges he was jointly employed by the department and the District, the allegations to not support this legal conclusion. Rather, review of the allegations again indicates the District is the only proper defendant. For example, Kajberouni alleges compensation for the BVPD officers came from the District. (Doc. 51 at 7, ¶ 10.) In addition, Kajberouni was subject to provisions in the *District's* Employee Handbook (*Id.* at 5, ¶ 7.) Despite the issue being raised in a prior motion to dismiss, Kajberouni neither alleged nor identified facts supporting a conclusion that the BVPD is a separate entity, and information subject to judicial notice indicates the BVPD is merely a department of the District. Accordingly, the Court finds the identified references to the BVPD are immaterial to the claims raised, and the motion to strike is granted.

## IV. Request for Leave to Amend

Pursuant to Rule 15 of the Federal Rules of Civil Procedure, leave to amend "shall be freely given when justice so requires," bearing in mind "the underlying purpose of Rule 15 to facilitate decisions on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (alterations, internal quotation marks omitted). When dismissing a complaint for failure to state a claim, "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Id.* at 1130 (internal quotation marks omitted). Accordingly, leave to amend generally shall be denied only if allowing amendment would unduly prejudice the opposing party, cause undue delay, or be futile, or if the moving party has acted in bad faith. *Leadsinger, Inc. v. BMG Music Publishing*, 512 F.3d 522, 532 (9th Cir. 2008).

Kajberouni requests that if the motion to dismiss is granted, he be again granted leave to amend. (Doc. 59-1 at 10.) However, as the Court previously determined, his claim for a violation of unfair practices failed as a matter of law. In addition, Kajberouni is unable to establish standing for injunctive relief as a former employee as the District. Because the defects identified in the SAC

cannot be cured by amendment, the request for leave to amend is denied.

**V.      Conclusion and Order**

For the reasons set forth above, the Court **ORDERS**:

1. The motion to dismiss (Doc. 54) is **GRANTED IN PART**.
2. Dismissal of the third claim for relief related to reimbursement is **DENIED**.
3. The fourth cause of action against the District is **DISMISSED without leave to amend**.
4. The prayer for injunctive relief is **DISMISSED without leave to amend**.
5. The motion to strike (Doc. 55) is **GRANTED**.
6. References to the BVPD as an entity separate from the District in paragraphs 6, 38, 39, 41, 42, and 43 of the Second Amended Complaint are **STRICKEN**.

IT IS SO ORDERED.

Dated:     **November 21, 2022**

UNITED STATES DISTRICT JUDGE